**Not for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| GLENN S. BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 04-343-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JOEY ANDES, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

This action involves Plaintiff Glen Baker's claims that he was subjected to cruel and unusual punishment and excessive force in violation of the Eighth Amendment. He also asserts claims of intentional infliction of emotional distress and negligence under state law. The matter is before the Court for consideration of: (i) Defendant Laurel County Detention Center's ["LCDC"] motion to dismiss or, in the alternative, motion for summary judgment [Record No. 24]; (ii) Defendants James Lewis, Noah Baker, Tom Barker, Billy Oakley, Roy Crawford, David Westerfield, and Lawrence Kuhl's motion to dismiss or, in the alternative, motion for summary judgment [Record No. 34]; (iii) Defendant Joey Andes' joinder in LCDC's motion [Record No. 30]; and (iv) the various responses and replies to these matters. [Record Nos. 31, 33, 39 and 43] For the reasons that follow, the motions are without merit and will be denied.

-1-

<u>FACTUAL ALLEGATIONS</u>

Early on Sunday, May 9, 2004, Laurel County Detention Center Guard Joey Andes entered the trustees' cell at the LCDC and announced that he planned to embarrass someone before the day ended.  Following this statement and for approximately an hour while Baker was attempting to serve dinner, Andes allegedly tried to "start trouble" with him.  However, Baker asserts that he "would only walk away."  Thereafter, Andes apparently accused Baker of having a bad attitude and announced he was going to place him in lockdown on the third floor.  The plaintiff admits he told Andes he would not go to the third floor and, alternatively, recommended that Andes put him in "the hole."   In response, Andes called Booking Officer Will Eldridge and told Eldridge to bring him mace.

Baker asserts that he advised Andes that he would not cause any trouble and that Andes did not need the mace.  Allegedly, in front of twelve other people, Andes told Baker that he was going to be maced.  Baker claims that he was removing clothes from his laundry bag when Eldridge entered the cell with mace.  Baker then repeated that Eldridge didn't need the mace, but to no avail.  Baker asserts  that he was maced three times in the face.  Thereafter, Baker contends that he was "pushed down on a bunk," handcuffed from behind, hit in the back with Andes' fist or his radio, "pushed face first into the cell door," pushed face first into "every wall" while going down the stairs.

At some point following the alleged assault, Baker asked Andes why he was doing this to him.  In response, Baker allegedly was "pushed [by Andes] into a shower room and left."  Andes returned to the trustees' cell where Baker apparently was still confined and allegedly

-2-

announced that "I told you guys that I would embarrass somebody today." That night, Baker allegedly was placed in "the hole" (possibly by Andes).

The following evening (May 10, 2004), Baker was apparently removed from the hole by an unspecified person and was escorted down to booking to give a statement regarding what had happened. Baker asserts that he talked with Frank Gibson and Todd Prince. Apparently, Gibson and Prince are LCDC officials, because the plaintiff claims he presented the facts relating to his complaint in the prison grievance procedure by telling his story to these individuals. [*See* Record No. 6, Form Regarding Exhaustion of Administrative Remedies.] Baker also alleges that the statement he made to Gibson and Prince was videotaped and recorded. Andes was fired either the day the grievance statement was given or the next morning.

Apparently during the morning of Tuesday, May 11, 2004, Laurel County Detention Center Guards Jeff Bowling and Marc Murphy came to the LCDC. They had been the "floor guards" working at the time of the alleged assault. Bowling and Murphy allegedly gave statements against Andes to unspecified persons regarding the incident with the plaintiff. And on the same date, Baker asserts that he was taken to the London City Police Station where he reportedly gave the same statement that he had previously given in the presence of Gibson and Prince at the LCDC. He claims that Jeff Bowling and Marc Murphy were also asked to go to the London City Police Station and give statements regarding this incident.

Baker alleges that several other inmates filed grievance forms concerning this incident and were taken to the London City Police Station where their statements were taken. Baker

claims that he was asked by unspecified persons to take a lie detector test and although he agreed to the request, no such test has been administered to date.

Baker insinuates that Andes had a pattern of inappropriate assaultive behavior against inmates.  In support of this assertion, he contends that on May 29, 2002, Andes allegedly broke inmate Jeff Taylor's arm and that Andes "has been involved in a few other incidents."  Baker also asserts that he spoke with Jeff Bowling a few times after all this occurred.  Allegedly, Bowling told Baker that "most of the administration here were giving him [Bowling] a very hard time."  Baker reports that only a few weeks after this incident occurred, Bowling resigned from the LCDC.

Jailer Sizemore's records reflect that Baker was booked into the Detention Center on February 4, 2004, and remained there until the date of the incident. [See Record No. 24, p. 2.] This would suggest that Baker was transferred out of the LCDC on May 9, 2004.  Baker, however, indicates that he was still confined at the LCDC on May 11, 2004, when he allegedly was taken to the London City Police station to file a complaint.

The LCDC reportedly has an Inmate Orientation Manual and, pursuant to LCDC policy, a copy would  have been given to Baker upon his arrival at the facility.  *See* Affidavit of Jailer Jack Sizemore.  However, Sizemore does not state that he has personal knowledge that the LCDC manual was, in fact, given to Baker upon his arrival at the LCDC.  *Id.*  Regarding grievances, the LCDC "Inmate Orientation Manual" merely states:

> COMPLAINTS:  Any inmate who wishes to file a grievance may obtain forms from any deputy.  Fill it out; seal it and send to the front office.  Legitimate complaints will be answered.

-4-

*See* Attachment #4, p. 7, to Record No. 24.  This manual does not indicate that it provides the sole or exclusive method an inmate may use in registering a grievance.  Further, it does not make reference to the PLRA or state that a grievance is mandatory.

Sizemore claims that his review of the documents in the possession of the LCDC – as opposed to his review of the audio and/or video tapes presumably in the possession of the LCDC – reveals that there are no "documents," as opposed to tapes, showing that Baker "completed the necessary form or otherwise filed a complaint or internal grievance regarding the incident complained of in his Complaint." [*See* Exhibit to Record No. 24 at attachment #3, Affidavit of Laurel County Jailer Jack Sizemore.]  Jailer Sizemore does not define what he means by a "complaint or internal grievance."  He does not explain whether he considers the audio and video tapes made of Baker to have been a complaint or an internal grievance.  He does not explain what he deemed to have been "the necessary form" or how any such form was rendered "necessary."

Allegedly, the investigation involving Gibson and Prince (which may have been performed on behalf of the LCDC regarding the complained-of incident), "was performed based upon grievances filed by other inmates" and there "was never a grievance or complaint filed by the Plaintiff."  Jailer Sizemore claims that "the statements of the Plaintiff were not taken in response to a grievance filed by him."  It is further alleged that Baker was, instead, a fact witness for the grievances filed by other inmates.  Clearly, Jailer Sizemore does not consider Baker's audio and videotaped statement to have been the equivalent of the plaintiff's first opportunity to register a grievance *via* an alternative means newly established by LCDC administrators.

MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT

The defendants claim that under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), *et seq.*, Baker was required to exhaust all available administrative remedies before filing suit. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2003); *Boyd v. Corrections Corporation of America*, 380 F.3d 989, 994 (6th Cir. 2004); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). They allege that this action must be dismissed pursuant to 42 U.S.C. §1997e(c)(1) and/or 42 U.S.C. §1997e(a) because Baker has failed to establish that he has exhausted administrative remedies that were in place. In addition, they claim that the action should be dismissed based on Baker's having failed to plead with specificity the administrative proceedings and their outcomes.

The defendants claim that:

(1)     mandatory LCDC administrative remedies requiring a written statement from the grievant were codified in LCDC policy at the time of this incident;

(2)     Baker was on notice of those mandatory administrative remedies;

(3)     Baker never sufficiently alleged he had exhausted any administrative remedies;

(4)     Baker never actually exhausted any administrative remedies and, therefore, under the PLRA, this action must be dismissed; and

(5)     Baker did not file a sufficient response to their motion to dismiss or for summary judgment. Therefore, they claim they are entitled to such relief.

Baker's Response

-6-

In response to the pending motion, Baker has attached a copy of the original complaint which was signed pursuant to a declaration that the signature was under penalty of perjury and that his statements were true and correct.  Otherwise, he states that, because he is currently confined in the Johnson County Detention Center, he has no way to obtain evidence to refute the defendants' assertions.  He also requests permission to take depositions. The sworn allegations in Baker's complaint regarding the grievances he made after the complained-of incident are sufficient to refute the defendants' motion to dismiss, which is based entirely on the defendants' claim that the plaintiff has failed to exhaust his administrative remedies.

<u>Exhaustion of Administrative Remedies</u>

The defendants claim they are entitled to dismissal or summary judgment in their favor because Baker allegedly failed to exhaust his administrative remedies.  Conversely, Baker claims he exhausted administrative remedies by doing everything he could do and by doing everything required of him to report his grievances.  When he pled that several other inmates filed grievances, Baker may also have implied that he too had filed a grievance.  Thus, it is not a foregone conclusion that Baker never alleged that he filed a grievance and the facts on this issue may be conflicting.  Nevertheless, assuming that Baker did not file a paper grievance, his complaint should not be dismissed for failure to exhaust PLRA-compliant grievances.

In *Perkins v. Obey*, 2005 WL 433580 (S.D.N.Y.), the court discussed the Second Circuit's recent decision in *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004), regarding a three-part test to determine whether the  PLRA's exhaustion requirement had been satisfied.  The court wrote:

In *Hemphill*, the Circuit held that "where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies, "a three-part test must be applied. 380 F.3d at 686. First, "[d]epending on the inmate's explanation for the alleged failure to exhaust," the court must determine whether administrative remedies were "available" to the prisoner. *Id.* (citing *Abney*, 380 F.3d at 663). Second, the court must ask whether the defendants "forfeited the affirmative defense of exhaustion by failing to raise it," or are estopped from raising the defense by their own actions inhibiting the plaintiff's access to available administrative remedies. *Id.* (citing *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ziemba*, 366 F.3d at 163). And, third, where administrative remedies were available and the defendants neither waived the non-exhaustion defense nor are estopped from asserting it, "the court should consider whether 'special circumstances' have been plausibly alleged that 'justify the prisoner's failure to comply with administrative procedural requirements."' *Id.* (citing *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Rodriguez v. Westchester County Jail Correctional Department*, 372 F.3d 485, 487 (2d Cir. 2004)).

*Perkins v. Obey,* 2005 WL 433580, *4 (S.D.N.Y.).

<u>"Availability"</u>

The first question to consider when addressing whether a prisoner has sufficiently exhausted his PLRA-inspired administrative remedies is whether administrative remedies were "available" to the prisoner. The defendants claim that the alleged grievance procedure set forth in the "Complaints" section of the LCDC's "Inmate Orientation Manual" is mandatory and, therefore, comports with the PLRA. However, as noted above, the manual merely states that "[a]ny inmate who wishes to file a grievance may obtain forms from any deputy. Fill it out; seal it and send to the front office. Legitimate complaints will be answered." [*See* Attachment #4, p. 7, to Record No. 24.] The defendants claim the LCDC "Complaints" policy is a PLRA-compliant grievance policy and, thus, inmate compliance with it was mandatory. The defendants claim that the only way Baker could have complied with the PLRA would have been by following this procedure. The defendants' position is flawed, because the LCDC

-8-

"Complaints" policy is neither exclusive nor mandatory. [*See* Record No. 24, Memorandum at p. 5.] This policy merely suggests that an inmate "may" file a grievance. This implies that filing a paper complaint is optional and that an inmate grievance by alternative means, such as audio and/or video tape, is permissible. Because the LCDC "Complaints" policy is not a PLRA-compliant mandatory exhaustion requirement, PLRA administrative remedies were not "available" to the plaintiff.

Additionally, the LCDC "Complaints" policy was not available to Baker as such is required pursuant to 42 U.S.C. §1997e(a). The LCDC Inmate Orientation manual states that only "Legitimate complaints will be answered." Because the LCDC "grievance" system is only unpredictably and discretionarily available to inmates, it is neither a mandatory nor an available system of administrative remedies. The goal of the PLRA is to encourage internal administrative resolutions to inmates' complaints so as to avoid unnecessary litigation in the courts. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The use of the word "may" for inmates and the non-mandatory discretionary nature of the policy for LCDC personnel establishes that the LCDC grievance system was never fully "available" to inmates, as such "availability" is contemplated under §1997e(a). A non-mandatory, and unpredictable inmate grievance mechanism does not foster the PLRA's goal of encouraging internal administrative resolutions to inmates' complaints. Only if institutionally-imposed mandatory grievance procedures are in place does the PLRA then require mandatory exhaustion of those remedies before a prisoner may resort to federal court. *See Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir.

1999). Here, because the "availability" of the LCDC inmate "complaint" system is questionable, Baker did not have to file such a "complaint" before he could bring this action.

In addition, the LCDC "Complaints" mechanism may otherwise have not been "available" to Baker until such time as he was released from "the hole." Baker apparently had been confined in "the hole" (presumably solitary confinement) for the night immediately after the prior evening's alleged assault. That confinement allegedly was effectuated by Andes – the person who is accused of having unjustifiably assaulted the plaintiff. It is reasonable to assume that until such time as Baker was supervised by a correctional officer other than Andes, he would have been justifiably reluctant to ask Andes for a "complaint" form to use to report the defendant conduct, and Baker would have been justified in being skeptical that Andes would have provided him with any such form.

It is equally reasonable to assume that Baker would not have been empowered under the circumstances by the existing LCDC "Complaints" policy to direct Andes to take a complaint to the front office. Consequently, until Baker was relieved of Andes' supervision, the complaint mechanism probably was not "available" to him. *See Perkins v. Obey*, 2005 WL 433580, *4 (S.D.N.Y.) (if corrections officers fail to deliver grievance forms for prisoners, such conduct renders grievance remedies "unavailable" for purposes of §1997e(a); *see also Aldridge v. Gill*, 47 Fed.Appx. 751, 2002 WL 31119722 (6th Cir. (Ky.) (a court must determine whether jail regulations provided for a grievance system as a practical matter in light of the conditions then existing at a jail).

This conclusion is also supported by the factual allegation that, on the same day he gave his audio/video statement and registered a complaint at the London Police Department, Baker was transferred out of the LCDC.  This is the course of events that is implicated in Jailer Sizemore's affidavit.  Under such circumstances, Baker obviously would have had no further opportunity to file an optional paper LCDC grievance.  Thus, LCDC's paper grievance system would not have been "available" to him at that time.  *Leacock v. City of New York,* 2005 WL 323723, *5 (S.D.N.Y., Feb. 10, 2005) (an inmate's transfer from the custody of one jurisdiction to that of another deprives the inmate of "available" administrative remedies and thus excuses the inmate's obligation to exhaust such remedies as required by the PLRA); *Rodriguez v. Westchester County Jail Correctional Department*, 372 F.3d 485 (2d Cir. 2004) (when only a brief interval elapses between the episode giving rise to the prisoner's complaint and the prisoner's transfer to the custody of another jurisdiction, administrative remedies in the first institution may have become "unavailable" for purposes of the PLRA); *Nerness v. Johnson*, 401 F.3d 874 (8th Cir., March 18, 2005) (a former inmate need not exhaust administrative remedies of an institution where he/she was previously confined because, post-transfer, those remedies are no longer "available" ).

<u>Was Baker on Notice of the LCDC Grievance Procedure?</u>

The defendants assert that Baker was on notice of the LCDC "Complaints" section of their Inmate Orientation Manual.  Therefore, they claim that PLRA administrative remedies were "available" to him.  However, it is irrelevant whether the plaintiff had notice of the LCDC "Complaints" section because, as the Court has determined previously, that section did not make

PLRA-compliant mandatory exhaustion requirements "available" to Baker.  Moreover, even if the notice issue was not moot, whether Baker was on notice of the LCDC grievance procedure depends on which of the two existing LCDC grievance procedures (neither of which is a PLRA-inspired mandatory grievance procedure) is being referenced.

One paper grievance procedure allegedly was provided in the "Complaints" section of the LCDC Inmate Orientation Manual.  A second LCDC audio- and video-recorded grievance mechanism was utilized after Baker allegedly was assaulted.  The defendants assert that Baker indicated in his complaint that he was "clearly aware" of LCDC's Inmate Orientation Manual procedure for filing a "Complaint." [*See* Exhibit B at paragraph II(A).] Baker's initial pleading in this actions asks, "is there a grievance procedure in the institution where the facts happened?" Baker indicated "Yes."  Thus, the defendants contend, that Baker had notice to fully comply with the LCDC Inmate Orientation Manual "Complaints" section, and the fact that he did not do so requires dismissal of this case.

The defendants' position is not well taken because:  (1) Baker had no PLRA-inspired mandatory duty to comply with the LCDC Manuel's "Complaints" section; (2) Baker had two options (paper and/or audio/video recording) for registering his grievance and the defendants do not discuss the second (recording) option[1]; and (3)  notice is irrelevant because lack of notice

---

[1]  That Baker checked the "Yes" box on the complaint form could have been his acknowledgment that LCDC officials directed him to tell his story for the videotape and tape recording and that LCDC officials transported him outside of the institution to the local police station to give a similar complaint.  Baker may have deemed his cooperative actions to be in compliance with an institutionally implemented and approved audio/video complaint/grievance recording procedure.  The fact that Baker checked "yes" in section II.A.(1) section of the form complaint is no indication that he was fully aware of the LCDC Inmate Orientation Manual section on "Complaints."

-12-

does not provide a waivable excuse for an inmate's failure to exhaust PLRA-compliant administrative remedies. *See Brock v. Kenton County*, 93 Fed.Appx. 793 (6th Cir. 2004); *Gonzales-Liranza v. Naranjo*, 76 Fed. Appx. 270 (10th Cir. 2003). While correctional officials may offer reasonable notice by providing inmates with a handbook setting forth the grievance procedures, *see, e.g.*, *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 999 (6th Cir. 2004) (inmate never pled he never received the handbook or that prison officials denied him access to it), still, for the issue to not be moot the grievance procedure within that handbook must be PLRA-compliant.

The defendants fail to address the audio/video recorded grievance administrative procedures that were obviously adopted by LCDC and implemented by Baker. These new policies were obviously in effect when Baker first had an opportunity to file a grievance. There is not enough information to know whether they were PLRA-compliant. However, it is not necessary to resolve this issue at this time because it is uncontested that Baker fully utilized those administrative procedures.

LCDC officials implicitly, if not explicitly, indicated that they approved of videotaped and/or tape recorded inmate complaints. Thus, it is disingenuous for them to now claim that Baker failed to comply with LCDC-established grievance procedures. Baker fully cooperated in complying with every grievance/complaint methodology offered to him by LCDC officials during the time period in which he would have had an opportunity to file any grievance or complaint. An inmate's reasonable belief that under specific circumstances exhaustion was not required justifies and excuses a failure to exhaust pre-established administrative remedies.

-13-

*Rodriguez v. Westchester County Jail*, 372 F.3d 485, 487 (2nd Cir. 2004). "[I]nstructions by prison officials that are at odds with the wording of [exhaustion of administrative remedies regulations] might 'render' [] the formal grievance procedure unavailable [to the plaintiff] within the meaning of 42 U.S.C. §1997e." *Giano v. Goord*, 380 F.3d 670, *677 (2nd Cir. 2004) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding that "a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under §1997e(a)").

The Court will not foster what appears to be the defendants' effort to create a defense by deceptively leading Baker to employ a newly effectuated audio/video recorded grievance procedure to only later have LCDC officials claim, in Court, that his non-compliance with the not-PLRA-compliant and "available" paper mechanism thwarts his federal claim. For LCDC officials to have directed Baker to participate in an apparently newly initiated LCDC recorded grievance procedure in lieu of the non-mandatory paper procedure and, thereafter, for LCDC officials to claim that Baker's case must be dismissed because he did not utilize the paper grievance method comes dangerously close to attempting to perpetrate a fraud upon this Court.

The goal of the PLRA is to encourage internal administrative resolutions to inmates' complaints so as to avoid unnecessary litigation in the courts. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Congressional intent in passing §1997(e) was to "relieve the court system of the burden of excessive petitioning on the part of those incarcerated persons but also an intent to first permit those charged with the responsibility for jail and prison facilities to remedy wrongs that occur on their watch and to improve conditions for those incarcerated under their care. *Smith v. Franklin County, et al.*, 227 F.Supp.2d 667, 675

-14-

(E.D. Ky. 2002) (citing *See, e.g.*, 141 Cong. Rec. §14408-01, §14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole); *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999)).

<u>Waiver</u>

The defendants have waived their affirmative defense that Baker failed to exhaust administrative remedies when he fully cooperated in the audio/video taped investigation interview because the defendants have failed to raise that issue.

<u>Estoppel</u>

The defendants are estopped from asserting the affirmative defense of exhaustion of administrative remedies because it appears their own actions inhibited Baker's access to those remedies when they: (1) failed to adopt PLRA-compliant Inmate Orientation Handbook disseminated "<u>Complaint</u>" information; (2) permitted Baker to be isolated in "the hole" by his alleged assailant after the alleged assault; (3) enticed Baker to assert his grievances via audio/video recording in lieu of filling out a paper complaint which they erroneously deemed to be mandatory; and (4) swiftly transferred Baker out of the LCDC under circumstances whereby he had no opportunity to file a paper complaint. *Perkins v. Obey*, 2005 WL 433580, *4 (S.D.N.Y.)

Congress' goals in passing the PLRA would "not be effectuated by finding that Baker failed to exhaust his administrative remedies" when he had reasonably taken other steps resulting in his claims having been made known to the appropriate authorities, and the defendants timely received all of the information requested on the administrative remedies form and the prisoner's efforts resulted in his claims having been "recorded." *Jones v. Courtney*, 2005 WL 562719, *3

-15-

(D.Kan.). In short, prison officials may not exploit the PLRA's exhaustion requirement to create unjustifiable technical defenses because, under such circumstances, the administrative remedies are deemed "unavailable." *Klebanowski v. Sheahan*, 2005 WL 910729, *4 (N.D. Ill., March 10, 2005).

"Special Circumstances"

Pursuant to the Second Circuit's exhaustion test, where administrative remedies were available and the defendants neither waived the non-exhaustion defense nor are estopped from asserting it, the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements. Because PLRA-compliant administrative remedies were not available to Baker in this case, and because the defendants have waived part of the non-exhaustion defense and are otherwise estopped from asserting it, it is not necessary for this Court to consider whether "special circumstances" have been plausibly alleged that justify Baker's failure to exhaust administrative remedies. However, under the circumstances of this case, it is clear that Baker has encountered "special circumstances" that justify his failure to comply with the LCDC's PLRA non-compliant "Complaints" procedure.

Sufficiency of Plaintiff's Exhaustion Pleadings

The defendants attempt to elevate form over substance in this *pro se* prisoner case when they claim that any pleading or demonstration by the *pro se* plaintiff that he has exhausted any of the administrative remedies available to him is "conspicuously absent" from his complaint and, therefore, the complaint must fail as a matter of law under Fed.R.Civ.P. 12(b)(6) and/or

-16-

Fed.R.Civ.P. 56.  The defendants also claim this complaint must fail because Baker allegedly did not "plead with specificity" how the "available" administrative remedies were exhausted and the outcome of the exhaustion, as such specificity allegedly is required.

There were no PLRA-compliant "available" administrative remedies to prisoners in the LCDC.  Under the PLRA, prisoners in county jail facilities do not have to exhaust administrative remedies in order to maintain a lawsuit against county officials where there were no available administrative remedies.  *Shook v. Board of County Commissioners of the County of El Paso,* 216 F.R.D. 644 (D.Colo., 2003).  As it has been determined that the LCDC had no PLRA-compliant administrative remedies available to Baker, his complaint does not fail for his failure to specifically plead how he exhausted administrative remedies.  Moreover, Baker's complaint is replete with allegations that, once released from Andes' custody, he fully complied with all avenues then recommended to and/or established for him by LCDC officials to make the content of his grievance known to officials.  Thus, Baker's pleadings are sufficient and do not warrant dismissal.

<u>Did the Plaintiff Allegedly Filed A Grievance?</u>

The defendants claim Baker's complaint must be dismissed because he never filed a grievance and that any of the actions taken by LCDC officials were only as a result of grievances filed by other inmates.  Because the LCDC did not have PLRA-compliant administrative remedies in place, whether Baker filed grievances is a moot point.  As has previously been explained, the video tape and the audio tape and the London Police Station complaint were all LCDC-authorized methods by which Baker did, in fact, file his grievances by newly

implemented LCDC-approved methods that were beyond those methods previously contemplated in the non-mandatory "Complaints" section of the LCDC Inmate Orientation Manual.  The fact that the grievances filed by other LCDC inmates (either immediately after Andes alleged assault or the following morning, which were apparently filed while the plaintiff was confined in "the hole") may have been the impetus for LCDC officials to swiftly respond and newly implement more sophisticated methods by which Baker could make a record of his grievance has no bearing on the fact that the plaintiff did file audio/video grievances, and did fully comply with filing all of the grievances that LCDC officials requested of him or which may have been "available" after the incident.

In summary, this Court concludes that Baker fully exhausted the administrative remedies that were available to him at time relevant to this proceeding.

<u>CONCLUSION</u>

For the reasons discussed herein, it is hereby **ORDERED** the motions to dismiss or, in the alternative, for summary judgment [Record Nos. 24, 30 and 34] are **DENIED**.

This 12th day of May, 2005.

Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**

-18-